J-S62037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHRISTOPHER LEE SIRMONS | |
| Appellant | No. 261 MDA 2016 |

Appeal from the Judgment of Sentence December 17, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001770-2014

BEFORE:  GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:            **FILED SEPTEMBER 09, 2016**

Appellant Christopher Lee Sirmons, appeals from the judgment of sentence entered in the Centre County Court of Common Pleas, following his jury trial convictions for two counts each of aggravated assault and simple assault.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. On July 11, 2014, Appellant was incarcerated at SCI-Rockview.  At approximately 7:45 p.m., the inmates were in a "blackout" period, which is a recess-like time when inmates can play cards, board games, *etc*. Corrections Officer ("CO") Garrett Dixon was on duty performing security rounds and his normal responsibilities with respect to the care, custody, and

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 2701(a)(1), respectively.

control of inmates. CO Dixon observed Appellant standing in an unauthorized area, near a divider gate that separates the Restricted Housing Unit ("RHU"). Inmates are not permitted to stand near the divider because contraband is often passed into the RHU. CO Dixon asked Appellant what he was doing by the gate; Appellant did not respond. CO Dixon then ordered Appellant to remove the gloves he was wearing and informed Appellant that CO Dixon was going to perform a pat-down due to Appellant's suspicious behavior. Appellant initially argued about removing his gloves, but he eventually complied. During the pat-down, Appellant became argumentative. CO Dixon completed the pat-down and found no contraband on Appellant's person.

CO Dixon directed Appellant to return to his cell. Appellant did not comply. Instead, Appellant began walking in a different direction. CO Dixon again ordered Appellant to return to his cell. Appellant failed to comply and laughed at the officer. At that point, CO Dixon commanded Appellant to "cuff up," meaning Appellant must put his hands behind his back so CO Dixon could handcuff him. Appellant put his hands behind his back and while CO Dixon was reaching for handcuffs, Appellant turned around and punched CO Dixon in the face with a closed fist. Appellant hit CO Dixon again in the jaw. Appellant continued swinging punches as CO Dixon attempted to regain control of Appellant.

CO Daniel Sayers was on duty during the incident and observed the

assault and the events leading up to it. Specifically, CO Sayers heard CO Dixon command Appellant to go to his cell. When CO Dixon ordered Appellant to "cuff up," CO Sayers saw Appellant stand with his back toward CO Dixon and then shift as if he was ready to strike. CO Sayers then watched Appellant strike CO Dixon. CO Sayers responded to the scene to aid CO Dixon in controlling Appellant. When CO Sayers tried to restrain Appellant, Appellant struck CO Sayers in the face with a closed fist. Appellant got on top of CO Sayers and continued to fight with him.

Lieutenant Lynn Smith was on duty during the incident and received a transmission over the radio regarding a fight, so he responded to the scene. Lieutenant Smith observed Appellant on top of CO Sayers. Appellant disobeyed multiple orders to put his hands behind his back. CO Kevin Falls also heard a fight occurring and saw an officer and an inmate rolling around on the ground. CO Falls responded to the scene and Lieutenant Smith directed him to secure Appellant, along with another officer. The officers eventually restrained Appellant. Shortly thereafter, Appellant said to CO Falls: "Falls, man, they got me. It was a fair fight. I deserved it, but they fucking got me." (N.T. Jury Trial, 11/6/15, at 16-17). CO Dixon was swollen and sore for a few days following the assault, had difficulty chewing and opening his mouth, and took Motrin for pain. CO Dixon also described the pain felt from Appellant's initial blow as a seven or eight on a scale from one to ten. CO Sayers was in pain for about a week following the assault.

The Commonwealth charged Appellant with aggravated assault and simple assault. Appellant's jury trial began on November 6, 2015.[2] At the conclusion of evidence, defense counsel asked the court to accept her proposed point for charge No. 16, supplying an expansive definition of "bodily injury." The Commonwealth requested the court use only the standard jury instruction regarding "bodily injury." The court rejected defense counsel's proposed point for charge and used the standard jury instruction for that definition. Defense counsel objected to the court's ruling. Following deliberations, the jury convicted Appellant of two counts each of aggravated assault and simple assault.

On December 17, 2015, the court sentenced Appellant to consecutive terms of two to four years' imprisonment for each aggravated assault conviction, consecutive to the sentence Appellant was already serving. The simple assault convictions merged for sentencing purposes. Appellant timely filed a post-sentence motion on December 18, 2015, challenging the court's refusal to issue his proposed point for charge regarding the definition of "bodily injury." Following a hearing on February 8, 2016, the court denied the post-sentence motion. Appellant timely filed a notice of appeal on February 10, 2016. The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

---

[2] Appellant waived his right to attend or participate in his trial.

1925(b). Appellant timely complied on February 26, 2016.

Appellant raises one issue for our review:

DID THE TRIAL COURT ERRONEOUSLY REFUSE TO GIVE APPELLANT'S REQUESTED POINT FOR CHARGE NUMBER 16, AN EXPANDED DEFINITION OF "IMPAIRMENT OF PHYSICAL CONDITION OR SUBSTANTIAL PAIN?"

(Appellant's Brief at 10).

Appellant asserts the Crimes Code defines "bodily injury" as "impairment of physical condition or substantial pain." Appellant argues Pennsylvania case law has expanded on this definition to define "bodily injury" as "a physical event unlike those commonly occurring in normal life which, although unpleasant and somewhat painful, do not seriously interrupt one's daily life." Appellant contends this expansive definition demonstrates the legislature's intent to protect and preserve one's physical wellbeing but not to prevent temporary pain resulting from trivial contacts which are part of modern day living. Appellant claims his proposed point for charge recited language from case law concerning the definition for "bodily injury." Under Appellant's proffered definition, Appellant maintains he did not cause "bodily injury" to CO Dixon or CO Sayers because they sustained only minor abrasions. Appellant avers the court failed to give the jury sufficient guidance about the level of impairment or pain necessary to cause "bodily injury" for purposes of simple assault and aggravated assault. Appellant insists his was a "close case," so any ambiguity regarding the definition of "bodily injury" would not amount to harmless error. Appellant concludes the

court erred by refusing to give his proposed point for charge on "bodily injury," and this Court must grant Appellant a new trial. We disagree.

The Crimes Code defines the offenses of simple assault and aggravated assault, in pertinent part, as follows:

**§ 2701. Simple assault**

**(a) Offense defined.—**Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

\* \* \*

**§ 2702. Aggravated assault**

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

\* \* \*

(3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]

\* \* \*

**(c) Officers, employees, etc., enumerated.**—The officers, agents, employees and other persons referred to in subsection (a) shall be as follows:

\* \* \*

(9) Officer or employee of a correctional institution, county jail or prison, juvenile detention center or any other facility to which the person has been ordered by the court pursuant to a petition alleging delinquency under 42 Pa.C.S. Ch. 63 (relating to juvenile matters).

- 6 -

\*    \*    \*

18 Pa.C.S.A. §§ 2701(a)(1), 2702(a)(3), (c)(9).  The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301 (definitions).  Likewise, the Pennsylvania Suggested Standard Criminal Jury Instructions for "Simple Assault—Bodily Injury Attempted," "Simple Assault—Bodily Injury Caused," "Aggravated Assault—Attempt to Cause Bodily Injury to an Enumerated Person," and "Aggravated Assault—Causing Bodily Injury to an Enumerated Person" define "bodily injury" as "impairment of physical condition or substantial pain."  **See** Pa.SSJI (Crim), § 15.2701A (2016); Pa.SSJI (Crim), § 15.2701B (2016); Pa.SSJI (Crim), § 15.2702C.1 (2016); Pa.SSJI (Crim), § 15.2702D.1 (2016).

"Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when [the court] abused its discretion or committed an error of law."  **Commonwealth v. Janda**, 14 A.3d 147, 163 (Pa.Super. 2011).  Additionally:

> [W]e must review the jury charge as a whole to determine if it is fair and complete.  A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration.  The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

**Commonwealth v. Baker**, 963 A.2d 495, 507 (Pa.Super. 2008), *appeal denied*, 606 Pa. 644, 992 A.2d 885 (2010) (quoting **Commonwealth v.**

*Jones*, 954 A.2d 1194, 1198 (Pa.Super. 2008), *appeal denied*, 599 Pa. 708, 962 A.2d 1196 (2008)).  Further:

> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue.  A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error.  Consequently, the trial court has wide discretion in fashioning jury instructions.  The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Baker, supra* at 507 (quoting *Commonwealth v. Brown*, 911 A.2d 576, 582-83 (Pa.Super. 2006), *appeal denied*, 591 Pa. 722, 920 A.2d 830 (2007)).  *See also Commonwealth v. Towles*, ___ Pa. ___, 106 A.3d 591 (2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 1494, 191 L.Ed.2d 435 (2015) (holding jury instruction on "premeditation" thoroughly and accurately represented law on first-degree murder; trial court's instructions were largely based on standard jury instructions; trial court was free to reject appellant's expansive definitions of "premeditation" and "deliberation" based on descriptions found in case law, legal treatises, and dictionaries; appellant does not assert that standard jury instructions impinge upon his constitutional or other legal rights; insofar as appellant asks this Court to critique subtleties of language in Pennsylvania Suggested Standard Jury Instructions, Court declines his invitation).

Instantly, Appellant submitted the following proposed point for charge

regarding the definition of "bodily injury":

**16. Impairment of Physical Condition and Substantial Pain Defined:**

As I have already indicated, in order for [Appellant] to be guilty of Aggravated Assault or Simple Assault, you must find that he caused or intended to cause bodily injury to Garrett Dixon and/or Daniel Sayers. The term "bodily injury" means a physical event unlike those commonly occurring in normal life which, although unpleasant and somewhat painful, do not seriously interrupt one's daily life. For example, if one cuts oneself shaving the average person does not think that he has suffered an injury even though such an event could be accompanied by some pain and bloodshed. Similarly, if one stubbed a toe or dropped something on it, even though it could elicit a fair amount of pain and might even result in some limping and the ultimate loss of a toenail, one would not think of himself as injured. The same could be said if one bumped an elbow against the wall or one's head on a low ceiling beam.

Accordingly, it is not enough for the Commonwealth to demonstrate temporary hurts resulting from trivial contacts. Rather, in order to prove that the defendant caused "bodily injury," the Commonwealth must prove that Garrett Dixon and/or Daniel Sayers suffered either "physical impairment" or "substantial pain." In order to demonstrate, beyond a reasonable doubt, that Garrett Dixon and/or Daniel Sayers suffered "physical impairment," the Commonwealth must demonstrate more than minor redness, bruises, or slight cuts. Similarly, in order to demonstrate that Garrett Dixon and/or Daniel Sayers suffered "substantial pain," the Commonwealth must demonstrate that they experienced more pain than mere temporary aches or soreness. In deciding whether they actually suffered "bodily injury," you can consider such relevant factors as whether they missed work or saw a physician due to bodily injury.

With respect to the Commonwealth's alternative theory that [Appellant] attempted to cause bodily injury by his actions, you must be convinced beyond a reasonable doubt that it was [Appellant's] conscious objective to cause this

- 9 -

amount of pain or physical impairment.

(Appellant's Proposed Points for Charge, 11/5/15, at 4-5). The court rejected Appellant's proposed point for charge No. 16, in favor of the standard jury instruction defining "bodily injury" as "the impairment of physical condition or substantial pain." (N.T., 11/6/15, at 200-01).

At the conclusion of the hearing on Appellant's post-sentence motion, the court explained its rationale for rejecting Appellant's proposed point for charge:

> Thank you. Well, the [c]ourt has on occasion found that some of the standard instructions are maybe way too complicated or maybe way too detailed, and has attempted to try to simplify them. I believe that the standard instruction as it relates to the definition of bodily injury and the definition for serious bodily injury[3] are succinct; they're clear; they're understandable. The [c]ourt declined to read the instruction that [defense counsel gave], that although it supplements in some fashion or another, the [c]ourt is always mindful of not extending the instructions to the jury longer than need be, not diluting the instructions with countless other amplifications, and so the [c]ourt believes that it was proper to give the standard instruction, but does not believe that it erred in failing to give the supplemental instruction requested by [defense counsel]. As such, the post-sentence motion is denied.

(N.T. Post-Sentence Motion Hearing, 2/8/16, at 7).

In its Rule 1925(a) opinion, the court added:

_____

[3] The court did not issue a jury instruction on "serious bodily injury" in this case, as the crimes at issue do not require serious bodily injury. ***See*** 18 Pa.C.S.A. §§ 2701(a)(1), 2702(a)(3).

- 10 -

> In the instant case, the [c]ourt used the standard jury instructions, and found that the definitions contained therein were sufficient to explain the charges of Aggravated Assault and Simple Assault. This [c]ourt respectfully submits that it did not abuse its discretion in denying [Appellant's] request to give a specific case law based instruction, and that our Orders of December 17, [2015] and February 8, 2016 should remain undisturbed.

(Trial Court Opinion, filed March 1, 2016, at 1-2). We see no reason to disrupt the court's decision to deny Appellant's proposed point for charge on "bodily injury." **See Janda, supra**; **Baker, supra**.

The standard jury instruction on "bodily injury" mirrors the definition supplied in the Crimes Code. **Compare** 18 Pa.C.S.A. § 2301 **with** Pa.SSJI (Crim), § 15.2701A (2016); Pa.SSJI (Crim), § 15.2701B (2016); Pa.SSJI (Crim), § 15.2702C.1 (2016); Pa.SSJI (Crim), § 15.2702D.1 (2016). Consequently, the court's instruction on "bodily injury" accurately reflects the law. **See Towles, supra**; **Baker, supra**. Appellant does not claim that the Pennsylvania Suggested Standard Jury Instructions impinge upon his constitutional or other legal rights. **See Towles, supra**.

Additionally, the cases on which Appellant relies do not involve a court's failure to issue a requested jury instruction and are factually distinguishable from this case. **See, e.g., Commonwealth v. Wertelet**, 696 A.2d 206, 210-13 (Pa.Super. 1997) (holding evidence was insufficient to support appellant's conviction for aggravated assault where appellant kicked trooper twice in left shin during unlawful arrest; stating: "**Although not necessarily controlling**, the connotation of bodily injury, a sort of common

- 11 -

person understanding of the term, suggests a physical event unlike those commonly occurring in normal life which, although unpleasant and somewhat painful, do not seriously interrupt one's daily life"; evidence showed appellant did not kick trooper as hard as she could but merely kicked trooper with back of her heel as she was flailing about and squirming while police attempted to handcuff her; trooper testified pain he experienced was "similar to bumping your shin on a coffee table in the dark when you're walking through the house"; trooper's description of pain did not fall within general connotation of term "injury"; thus, evidence was insufficient to prove trooper experienced "bodily injury" necessary for aggravated assault conviction) (emphasis added); *Commonwealth v. Kirkwood*, 520 A.2d 451 (Pa.Super. 1987) (holding evidence was insufficient to support appellant's conviction for simple assault where appellant swung his dance partner violently about dance floor, as result of which dance partner sustained bruises and fingernail marks on her arms; temporary aches and pains brought about by strenuous, even violent, dancing are inadequate basis for imposing criminal liability upon appellant for assault).

Further, we disagree with Appellant's position that his was a "close case." *See, e.g., Commonwealth v. Brown*, 23 A.3d 544 (Pa.Super. 2011) (*en banc*) (affirming appellant's conviction for aggravated assault where appellant threw officer to ground when officer attempted to handcuff appellant; during struggle, appellant struck officer repeatedly on arm,

shoulder and mouth, causing officer to sustain swollen lip; rejecting appellant's reliance on **Wertelet** as distinguishable); **Commonwealth v. Marti**, 779 A.2d 1177, 1181 (Pa.Super. 2001) (reversing dismissal of aggravated assault charge for failure to set forth *prima facie* evidence of "bodily injury," and remanding for trial, where appellee struck sergeant in jaw with closed fist resulting in "slight swelling and pain"; we refuse to equate deliberate punch in face causing swelling and pain with facts in **Wertelet**, where appellant had delivered mild kick to trooper's shins while resisting arrest, which trooper described as similar to bumping into coffee table); **Commonwealth v. Richardson**, 636 A.2d 1195 (Pa.Super. 1994) (affirming appellant's assault conviction where appellant punched officer in face with fist; appellant's punch broke officer's eyeglasses, caused officer to stumble backwards, and caused pain for next few days; appellant's argument that officer did not suffer bodily injury because he did not receive medical treatment or miss work as result of blow to face is frivolous; appellant's conduct in striking officer cannot be equated to violent dancing as in facts of **Kirkwood**). Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2016

- 13 -