J-A10025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRAHEEM HARTLEY | : | |
| | : | |
| Appellant | : | No. 1572 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 27, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006253-2019

BEFORE: PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:               **FILED AUGUST 19, 2024**

Appellant, Braheem Hartley, appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County on jury convictions for criminal trespass and simple assault.[1] Appellant argues that the evidence for simple assault was insufficient, and he should never have been tried for criminal trespass. After review, we affirm.

The trial court accurately summarized the facts adduced at trial as follows:

> The majority of the relevant facts in this matter took place between October 10, 2018 and the early morning hours of October 11, 2018. Victim, [N.C.] (hereinafter "Victim") had previously been "in a relationship on and off for a very long time" with Appellant. N.T. Trial, 9/15/2022, at 34. Victim lived in an apartment building located in the City of Philadelphia, and her

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3503 and 2701, respectively.

apartment was situated such that it had windows which faced the sidewalk. *Id*. at 35-36. The apartment had "an intercom system" that allowed anyone at the front door of the apartment building to connect to the lessee of the apartment's cellphone. *Id*. at 41. Appellant was not on the lease, never contributed to rent and/or utilities, and never left items that belonged to him in Victim's apartment. *Id*. at 46-47.

On October 10, 2018, Victim "had been playing cards and day drinking just about all day" with [D.W.], a man with whom she was in a new relationship. *Id*. at 36. Appellant "had reached out to [Victim] via phone and text message." *Id*. at 37. Appellant called Victim "close to 60" times over the course of the evening. *Id*. at 49. When Victim "never answered the phone," Appellant texted her that she "was cheating on him." *Id*. Victim responded in texts that she "wasn't home, and that [she] would see him the next day." *Id*. At "a little bit after midnight," Victim "stopped replying and stopped checking [her] phone." *Id*. at 38. The last time Appellant had been to Victim's apartment was approximately "five to seven weeks" prior. *Id*. at 53.

At around 2 a.m. on October 11, 2018, Victim and [D.W.] were "having sexual intercourse" when they "heard a bang" which they temporarily attributed to one of Victim's cats. *Id*. at 36, 48-49. Second[s] later, Appellant "comes through the [bedroom] window headfirst." *Id*. at 38, 49. In the process of entering the apartment, Appellant broke Victim's "shoe rack" which was by the window, and the window's screen had to be subsequently replaced by the landlord. *Id*. at 45-46. Victim quickly moved toward Appellant to protect [D.W.] when Appellant "grabs [her] neck and ... shoves [her]." *Id*. at 38. Victim had grabbed Appellant's belt loop to try to keep him from [D.W.] but Appellant had "put his hands on [her] neck prior to [her] grabbing his belt loop" and he then "shoved [her] to get [her] off of his belt loop." *Id*. at 56. Victim was later found to have bruises on her neck from "when [Appellant] grabbed [her]." *Id*. at 51. Appellant called Victim "a stupid bitch." *Id*. at 39. When Appellant moved away from Victim and towards [D.W.], Victim "went to [her] kitchen, and [she] sat on the floor in front of [her] oven, and [she] called 911." *Id*. Soon after that, Victim saw Appellant leave and "[h]e didn't have on shoes." *Id*. at 37. Upon arriving on the scene later that morning, Police Officer Stacey Little "observed that the window had been pushed up and there was a flip-flop -- one flip-flop inside the apartment and one outside on the ground." *Id*. at 70-71. The building's external

> camera captured Appellant approaching the building with flip-flops on and leaving the building without them. *Id*. at 60-61.

Trial Court Opinion, 1-3.

Appellant was tried by a jury before the Honorable Stephanie M. Sawyer on four counts: burglary, criminal trespass, simple assault of the Victim and simple assault by physical menace of D.W. The jury returned a verdict finding Appellant guilty of criminal trespass and simple assault of the Victim, and not guilty of burglary and simple assault of D.W. N.T. 9/15/22, 119. On January 27, 2023, the trial court imposed an aggregate term of four years' probation and 100 hours of community service with special conditions.[2] N.T. 1/27/23, 25-27. Appellant, through counsel, filed a timely Notice of Appeal.[3]

_____

[2] Specifically, the court imposed concurrent terms of probation of four years on the conviction for criminal trespass and of one year on the conviction of simple assault. N.T. 1/27/23, 25.

[3] On February 2, 2023, trial counsel moved to withdraw. Appellant's Motion to Withdraw; Trial Court Record 122-126. On February 3, 2023, the Commonwealth filed an unopposed Motion for Modification of Sentencing Order to add a stay away order as a special condition of Appellant's probation. Commonwealth Motion to Modify Sentence; Trial Court Record 127-129. The court granted trial counsel's withdrawal on February 23, 2023. Order, 2/23/23; Trial Court Record, 130. Appellant, through new counsel, filed a Notice of Appeal on February 25, 2023. Appellant's Notice of Appeal, 2/25/23; Trial Court Record, 131-149. On May 15, 2023, the trial court entered an order that Appellant must have no contact with the Victim or D.W. Order, 5/15/23; Trial Court Record, 159. On May 22, 2023, this Court quashed Appellant's appeal as having been filed prematurely because there had been no order on the docket disposing of the Commonwealth's motion to modify sentence prior to Appellant filing the notice of appeal. Superior Court Order, 5/22/23; Trial Court Record, 154. On June 5, 2023, all pending post sentence motions were denied by operation of law. Order, 6/5/23; Trial Court Record, 160. On June 8, 2023, Appellant filed a new Notice of Appeal. Appellant's Notice of Appeal, 6/8/23; Trial Court Record, 163-186.

On June 28, 2023, the trial court ordered Appellant to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), due by July 19, 2023. On that date, Appellant filed the ordered statement, listing five issues: two related to a defense to criminal trespass set out in 18 Pa.C.S. § 3503(c)(3); and three related to the sufficiency of the evidence of simple assault. Appellant's Statement of Matters Complained Of On Appeal; Trial Court Record, 195-198. The trial court filed its opinion on August 31, 2023, responding to the matters raised by Appellant.

Appellant raises two claims for our review in this appeal:

1. Whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish all elements of the offense of Simple Assault beyond a reasonable doubt? …

2. Whether the trial court Should have instructed the jury regarding the charge of Criminal Trespass when the charge was not held for court at the Preliminary Hearing and the Commonwealth filed a motion to add charges?

Appellant's Brief, 1.

When reviewing a sufficiency claim, we construe "all the evidence admitted at trial in the light most favorable to the verdict winner," and the evidence is legally sufficient when it would "enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017). The Commonwealth may prove an offense by means of wholly circumstantial evidence, and the evidence presented "need not preclude every possibility of innocence." *Id*. It

is the job of the finder of fact to pass upon "the credibility of witnesses and the weight of the evidence produced," and the fact-finder "is free to believe all, part or none of the evidence." *Id*.

The offense of simple assault requires that the Commonwealth prove that Appellant either attempted to cause bodily injury to another person or intentionally, knowingly, or recklessly caused bodily injury to another person. 18 Pa.C.S. § 2701(a)(1); *Commonwealth v. Wroten*, 257 A.3d 734, 743-44 (Pa. Super. 2021). The requisite intent may be shown by circumstances that reasonably suggest Appellant intended to cause bodily injury. *Commonwealth v. Eckrote,* 12 A.3d 383, 386 (Pa. Super. 2010). "Attempt, in the context of an assault, is established when the accused 'intentionally' acts in a manner which constitutes a substantial or significant step toward perpetrating bodily injury in another." *Commonwealth v. Rosado*, 684 A.2d 605, 608 (Pa. Super. 1996). The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301; *Commonwealth v. Rahman*, 75 A.3d 497, 501 (Pa. Super. 2013).

Appellant argues that the Victim "did not suffer an impairment of physical condition or substantial pain." Appellant's Brief, 10. However, the Victim need not have suffered bodily injury for the evidence to be sufficient. *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012). Appellant acknowledges in his brief that simple assault only "requires the defendant's conduct to be intentional, or, that it was the defendant's conscious object or purpose to cause such bodily injury." Appellant's Brief, 10.

The evidence, viewed in the light most favorable to the Commonwealth as required by the standard of review, demonstrates that Appellant, in a jealous rage, forced his way into the Victim's bedroom and attacked her. On October 10, Appellant repeatedly texted and called the Victim in an attempt to reconcile their broken romantic relationship. N.T. 9/15/22, 35, 49. She stopped returning his texts during the evening. *Id.*, 38, 65. She was starting a romantic relationship with D.W. and spent the night with him in her apartment. *Id.*, 36, 64, 66. Around 3:00 a.m. on October 11, Appellant arrived at her apartment building, broke the screen in the window of her bedroom and dove through the window headfirst. *Id.*, 36-38, 47-48, 64. Concerned that Appellant was armed and would attack D.W., the Victim left her bed to confront him, whereupon Appellant grabbed her by the neck with both hands and shoved her to the floor while calling her a "stupid bitch" and stating, "I knew you were fucking around." *Id.*, 38-39, 64-65. Appellant had grabbed the Victim so hard around the neck that the marks he left were still visible in a photograph taken an hour later at a police station. *Id.*, 50-51.

The requisite intent to commit simple assault may be shown by circumstances which reasonably suggest that the accused intended to cause injury. *See Commonwealth v. Hatch*, 314 A.3d 928, 934 (Pa. Super. 2024) (holding that the accused's "behavior, particularly her 'overly aggressive' conduct, reasonably suggests that she intended to cause bodily injury"). More to the point, intentional contact, including a grab or a push, is sufficient for simple assault where circumstances, including an accused's anger, permit a

reasonable inference it was his intent to cause injury. *See Commonwealth v. Richardson*, 636 A.2d 1195, 1196-1197 (Pa. Super. 1994) (holding evidence sufficient "to conclude that [the defendant] acted with an intent to cause bodily injury" where, "angered by the officer's conduct, [the defendant] ran to the officer, yelled "get out of here and go to hell," and reared his arm back and swung at the officer's face").[4] *See also Wroten*, 257 A.3d at 744 (holding there was *prima facie* evidence of simple assault where it "shows that [the accused] intended to cause bodily injury by pushing [the victim] into a corner and punching him in the face"); *In re M.H.*, 758 A.2d 1249, 1250 (Pa. Super. 2000) (holding that evidence was sufficient for simple assault where the accused "grabbed [the victim's] arm and shoved her against the wall saying, 'Back off'" after the victim had intervened in a shoving match between the accused and another student). In *M.H.*, this Court discussed the myriad circumstances in which bodily injury may arise, and distinguished among the "customary part of modern day living," such as consensual social contact and minor family disputes, and those that are more aggressive and "clearly criminal." *Id*., 1252. The evidence of Appellant's conduct in this case falls well on the side of aggressive and clearly criminal. We therefore hold that the

---

[4] In an unpublished non-precedential decision that we find persuasive, a panel of this Court held that evidence was sufficient for intent to cause bodily injury where, in the light most favorable to the Commonwealth, it demonstrated "that, in the midst of the altercation, and after Burell yelled and spit at the Victim, Burell swung a closed fist which made contact with the Victim's face." *See Commonwealth v. Burell*, 2500 EDA 2022, 2023 WL 6623612, **6 (Pa. Super., filed October 11, 2023) (cited pursuant to Pa.R.A.P. 126(b)).

evidence demonstrated both his intent to cause the Victim bodily injury and a substantial step toward doing so, and was thereby sufficient to sustain his conviction for simple assault.[5]

Appellant's second claim – that he should not have been on trial for criminal trespass – is waived from appellate review for two independent reasons. Appellant specifically claims that the "Commonwealth added the charge of [c]riminal trespass to the Bills of information without filing a motion for leave to amend the information with the Court." Appellant's Brief, 11. Our review of the record reveals no such claim having been raised in the trial court, and Appellant has not pointed to any place in the record where this claim was preserved as required by Pa.R.A.P. 2117(c). Appellant cites to the notes of testimony from the preliminary hearing in support of his assertion that criminal trespass was not held for court separate from the burglary charge, but not to an objection to the Commonwealth's alleged unapproved amendment adding the allegedly impermissible charge.[6] "Issues not raised in

_____

[5] In his sufficiency argument, Appellant quotes at length the trial court's jury instruction, the standard jury instructions, and the court's discussion of a jury question and answer, but presents no argument for appellate relief on the basis of these instructions. **See** Appellant's Brief, 7-11. To the extent that this discussion was meant to demonstrate reversible error it is unreviewable because Appellant took no exception to the trial court's instructions following the charge to the jury. **Commonwealth v. Pressley**, 887 A.2d 220, 225 (Pa. 2005); **Commonwealth v. Davis**, 273 A.3d 1228, 1246 (Pa. Super. 2022).

[6] The notes of testimony from the preliminary hearing are not in the certified record on appeal and therefore may not be relied upon in this appeal. *(Footnote Continued Next Page)*

the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); **Commonwealth v. Rush**, 959 A.2d 945, 949 (Pa. 2008) ("for any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court").

We note that on this record there was no surprise to Appellant that his trial included a charge of criminal trespass. The charge was listed among those Appellant faced when setting out the Commonwealth's offer for a guilty plea. N.T. 9/8/22, 7. The charge was read in open court during Appellant's formal entry of a plea of not guilty at the start of trial. N.T. 9/15/22, 9. The jury was

_____

**Commonwealth v. Wrecks**, 931 A.2d 717, 722 (Pa. Super. 2007) ("it is an appellant's burden to ensure that the certified record contains the documents reflecting the facts needed for review"). We note further that Appellant cites to the notes of testimony attached to his brief in support of his claim that "the Commonwealth argued strongly against the charge of Criminal Trespass being included at the Preliminary Hearing." Appellant's Brief, 12. If we were to entertain that claim even though the support for it is not in the certified record, we would note that he misconstrues the Commonwealth's argument contained therein, which was in rebuttal to his argument that burglary should not be held for trial. Rather than arguing that criminal trespass should not be held for trial, the Commonwealth argued that there was *prima facie* evidence of burglary, and the preliminary hearing court agreed. **See** N.T. 9/5/19, 16-19, 22 (Attached to Appellant's Brief in the Reproduced Record). We note further that a criminal information is filed by the Commonwealth, without requiring permission from the trial court, and is sufficient if it contains, *inter alia*, "a plain and concise statement of the essential elements of the offense substantially the same as *or cognate to* the offense alleged in the complaint." Pa.R.Crim.P. 560(B)(5) (emphasis added).

instructed on criminal trespass by the court before it began its deliberations, without objection. *Id*., 108-109, 114.

Appellant also failed to include this claim in his Rule 1925(b) Statement. Appellant's Statement of Matters Complained of On Appeal ¶¶ 1 & 2; Trial Court Record, 195. Nor is the claim subsidiary to those he did include with respect to the defense to criminal trespass encompassed in 18 Pa.C.S. § 3503(c)(3). *See* Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court"). As a result, the trial court has not addressed this claim in its opinion. "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii); *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020); *Commonwealth v. Rolan*, 964 A.2d 398, 409–10 (Pa. Super. 2008).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/19/2024

- 10 -